UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LISA SIGNORE, on behalf of herself and all others similarly situated,** | ) ) ) | |
| Plaintiff, | ) ) | C. A. No. |
| v. | ) ) ) | **CLASS ACTION** |
| **WELLS FARGO BANK, N.A.,** | ) ) | **Jury Trial Demanded** |
| Defendant. | ) ) ) | |

## I.   PRELIMINARY STATEMENT

1.   Plaintiff brings this class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (FCRA), on behalf of herself and other consumers nationwide who had their credit reports impermissibly accessed by Defendant pursuant to its systemic practice of aggressively "cross selling" banking services.

## II.   JURISDICTION AND VENUE

2.   Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §§ 1331.

3.   Venue is proper in this District pursuant to 28 U.S.C. 1391(b).

## III.   PARTIES

4.   Plaintiff Lisa Signore is an adult individual and citizen of the Commonwealth of Pennsylvania who resides in Norristown, Pennsylvania.

5.   Defendant Wells Fargo is a business entity and national banking association with offices located at 123 South Broad Street, Philadelphia, PA 19109.  Wells Fargo operates over six thousand banking locations throughout the United States.

## IV.     FACTUAL ALLEGATIONS

### A.  Defendant's Practices As A User of Credit Reports

6. Defendant is a financial institution offering a variety of consumer financial products, including mortgage lending, deposit accounts, and credit cards to consumers throughout the United States.

7. Defendant generates business in part by "cross-selling" financial products -- that is by persuading existing customers to sign up for additional products and services, including credit cards.

8. Defendant has adopted policies and procedures encouraging the aggressive marketing of financial products and services to existing customers, by maintaining quotas requiring employees to open additional accounts, and emphasizing the importance of cross-selling products.

9. Defendant is aware that its aggressive marketing policies and procedures incentivize employees seeking to meet their quotas to open new accounts, including credit card accounts, without the knowledge of consent of consumers.

10. These cross-sold accounts are initiated by a Wells Fargo employee, usually within a Wells Fargo branch location or office.

11. This internal account initiation stemming from cross-selling is reflected within Defendant's records and used to monitor compliance with quotas and to determine incentive compensation.

12. These cross-sold accounts are distinctly categorized from other credit accounts initiated truly by a consumer on his or her own.

13. Each time that Defendant opens a new credit card account, it obtains, reviews, and uses a consumer credit report about the consumer for whom the account is opened in order to assess the consumer's creditworthiness for the new credit product.

14. Defendant agreed and represented in its agreements with the national consumer reporting agencies (CRAs) from which it obtains consumer credit reports that Defendant would obtain and use consumer reports which were procured from said agencies only for purposes which are lawful under the FCRA as defined under 15 U.S.C. § 1681b.

15. Defendant was required by 15 U.S.C. §§ 1681b, 1681n, and 1681q to refrain from obtaining or using consumer credit reports from CRAs under false pretenses, and without proper authorization from the consumer who is the subject of the report.

16. Defendant has an affirmative duty to follow reasonable procedures, including those that would prevent the impermissible accessing of consumer credit reports. 15 U.S.C. § 1681b(f).

17. Despite these clear and unambiguous requirements of the FCRA, Defendant regularly pulls consumer credit reports regarding consumers without their knowledge or consent in order to open new credit card accounts as part of its cross-selling practices, in violation of the FCRA.

**B. The Experience Of Representative Plaintiff Lisa Signore**

18. On or about July 18, 2013, Lisa Signore walked into the Wells Fargo bank location at 2730 Dekalb Pike, East Norriton, Pennsylvania in order to make a payment on her the existing Wells Fargo mortgage loan.

19. After making a mortgage payment with the teller, Ms. Signore requested assistance with faxing a real estate tax bill that she had received to the appropriate department within Wells Fargo.

20. The Wells Fargo employee who assisted Ms. Signore by sending the fax requested that Ms. Signore provide her identification for "verification."

21. The employee then attempted to "cross-sell" Ms. Signore by proposing that she open a Wells Fargo checking account. Ms. Signore declined.

22. The Wells Fargo employee then recommended that Ms. Signore open a Wells Fargo "home rebate" credit card. Ms. Signore again declined, telling the employee that she had enough credit cards.

23. At no point during this transaction did Ms. Signore provide Wells Fargo with her consent to open a new credit card account or obtain a consumer credit report about her.

24. Wells Fargo nonetheless obtained a consumer credit report about Ms. Signore from Experian Information Solutions, Inc., a CRA, on July 18, 2013.

25. The July 18, 2013 impermissible pull of a consumer credit report resulted in what is called in industry parlance a "hard inquiry" on Plaintiff's credit report.

26. This hard inquiry was a credit inquiry for a new account, and Defendant used a code with Experian specifically designed for such new credit account inquires.

27. A hard inquiry is distinct form any "account review" inquiry that a creditor such as Defendant may initiate in order to review the status of an existing account, and which is obtained from Experian by use of a different code.

28. A hard inquiry, unlike an account review inquiry, is accessible to other third parties who can obtain Plaintiff's credit report.

29. A hard inquiry weighs negatively against a consumer's credit score and makes a consumer appear as a higher credit risk, whereas an account review inquiry has neither of those effects.

30. Wells Fargo has access to specific codes from Experian and other CRAs for account review inquiries when it seeks to review the status of an existing account.

31. Defendant, however, has access to and uses a different code for hard inquires relating to new accounts.

32. Ms. Signore never gave written instructions to Defendant to obtain and/or release to a third party a consumer report of which Ms. Signore was the subject during the time periods specified above; nor has Defendant ever been ordered by a court of competent jurisdiction to about a consumer report about Plaintiff pursuant to 15 U.S.C. § 1681b(1).

33. Defendant therefore had no permissible purpose for obtaining the consumer credit report about Ms. Signore on or about July 18, 2013.

34. After Ms. Signore left the bank on July 18, 2013, Wells Fargo opened a new "home rebate" credit card account in Ms. Signore's name, without her knowledge or consent.

35. Several days later, Ms. Signore received a letter from Wells Fargo dated July 18, 2013 which stated "Thank you for opening a new Wells Fargo Credit Card account."

36. Ms. Signore called Wells Fargo and disputed that the new credit card account was opened without her authorization, and Wells Fargo agreed to close the account.

37. On or about August 20, 2013, Wells Fargo sent Ms. Signore a letter (delete account letter) informing her that Wells Fargo had asked the four major CRAs that it uses to delete the credit card account it opened in her name from Ms. Signore's credit file.

38. The "delete account letter" that Defendant sent to Plaintiff is a form document.

39. Defendant sends the "delete account letter" to consumers who have disputed a credit account that Defendant investigates and determines to have been opened fraudulently or without the disputing consumer's authorization or consent.

40. As a result of Defendant's conduct, Plaintiff had her credit score and/or credit worthiness diminished and suffered a loss of her privacy.

41. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of the Defendant.

42. Defendant's practices and procedures described herein affected not only Plaintiff Signore but also other consumers about whom Wells Fargo pulled consumer credit reports without a permissible purpose prior to opening credit accounts without authorization.

43. At all times pertinent hereto, the conduct of the Defendant as well as that of its agents, servants and/or employees was willful, reckless, and in grossly negligent disregard for federal law and the rights of the consumers.

## V.   CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action individually and as a class action for Defendant's violations of section 1681b(f) of the FCRA, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All natural persons residing in the United States and its Territories who, within two (2) years prior to the filing of the Complaint and through the conclusion of this action: (a) had a credit account application initiated on their behalf by Wells Fargo; (b) had their credit report pulled by Wells Fargo, resulting in a hard inquiry; (c) disputed the Wells Fargo initiated credit account; and (d) within 90 days of the hard inquiry pull were sent a delete account letter or other similar notice indicating that Wells Fargo had requested the credit reporting agencies to delete the disputed credit account.

45. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the Class numbers in the hundreds or thousands.

46. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions include whether Defendant, by employing a policy and practice obtaining consumer reports on consumers in order to open credit accounts, willfully and/or negligently violated section 1681b(f) by obtaining consumer report without a permissible purpose.

47. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

48. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Plaintiff has secured counsel experienced in handling consumer class actions. Neither Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue this claim.

49. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

50. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small as the maximum statutory damages are limited to $1,000 under the FCRA. Management of the Class claims is likely to present significantly fewer difficulties

than those presented in many individual claims. The identities of the Class members may be obtained from Defendant's records.

## VI.     CAUSES OF ACTION

### COUNT ONE – FCRA § 1681b(f)

51. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

52. Pursuant to sections 1681n and 1681o, Defendant is liable for negligently and willfully violating the FCRA by accessing the credit reports of consumers without a permissible purpose or authorization under the FCRA.

## VII.     JURY TRIAL DEMAND

53. Plaintiff demands trial by jury on all issues so triable.

## VIII.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks relief against the Defendant as follows:

(a) That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Class;

(b)     That judgment be entered against Defendant for statutory damages in the amount of not less than $100 and not more than $1,000 per Class member and/or actual damages, pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o;

(c)     That judgment be entered against Defendant for punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

(d)     That the Court award costs and reasonable attorney's fees; and

(f) That the Court grant such other and further relief as may be just and proper.

Dated: May 19, 2014	Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

By:	*s/ James A. Francis*
James A. Francis
John Soumilas
David A. Searles
Lauren KW Brennan
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

*Attorneys for Plaintiff and the Class*